CHARLES F. PREUSS (State Bar No. 45783)
BRENDA N. BUONAIUTO (State Bar No. 173919)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*E-filing*

Attorneys for Defendants
ORTHO-MCNEIL PHARMACEUTICAL, INC.
and MCKESSON CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**WHA**

|  |  |
|---|---|
| TERRI RANDALL, an individual;<br><br>Plaintiff,<br><br>v.<br><br>ORTHO-MCNEIL PHARMACEUTICAL, INC., a Delaware Corporation; MCKESSON CORP. and DOES 1-500, inclusive,<br><br>Defendants. | Case No. C 07 3424<br><br>**NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) [DIVERSITY]** |

**TO THE CLERK OF THE COURT:**

Defendant Ortho-McNeil Pharmaceutical, Inc. ("OMP") removes to this Court the state court action described below, based on diversity of citizenship, pursuant to 28 U.S.C. §§ 1332, 1441(b). As detailed here, the Court should disregard the forum defendant rule because California resident defendant McKesson Corporation ("McKesson") was fraudulently joined.

### BACKGROUND

1.     On May 11, 2007, the Southern California law firms of Law Offices of Shawn Kohrrami and Kabateck Brown Kellner LLP and the Colorado law firm of Burg Simpson Eldredge Hersh Jardine PC filed a wrongful death action in the Superior Court of California, County of San Francisco, entitled *Terri Randall v. Ortho-McNeil*

*Pharmaceutical, Inc., McKesson Corp., and Does 1-500, inclusive*, Case Number CGC-07-463332. A copy of the Complaint in that San Francisco County state court action (the "Complaint") is attached as Exhibit A to the accompanying Declaration of Brenda N. Buonaiuto ("Buonaiuto Dec.").

The plaintiff in that action is a resident of Baltimore, Maryland, who seeks damages for the death of India C. Aziz, allegedly caused by decedent's use of the Ortho Evra® contraceptive patch, available only by prescription and manufactured by OMP. (Complaint ¶¶ 1-2, 11.) Plaintiff alleges causes of action for Negligence, Strict Liability Failure to Warn, Breach of Express Warranty, Breach of Implied Warranty, Negligent Misrepresentation, Fraud, and Wrongful Death against OMP, a Delaware corporation with its principal place of business in New Jersey.[1] (Complaint ¶ 12; Buonaiuto Dec. ¶ 3.) Although devoid of any factual allegations against McKesson, plaintiff's Complaint asserts those same claims against that defendant, a Delaware corporation with its principal place of business in San Francisco, California, whom plaintiff, a Maryland resident, alleges "distributed and sold Ortho Evra in and throughout the State of California." (Complaint ¶¶ 4, 17; Declaration of Greg Yonko, filed in *Abel, Theresa, et al. v. Ortho-McNeil Pharmaceutical, Inc., et al.*, USDC ND CA Case No. C 06 7551 SBA ("Yonko Dec."), attached to the Buonaiuto Dec. as Exhibit B, ¶ 2.)

**BASIS FOR JURISDICTION**

2.    <u>Basis for Jurisdiction in this Court</u>. This Court has original jurisdiction over this action, and OMP may properly remove to this Court, because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is diversity of citizenship of all named parties. 28 U.S.C. §§ 1332, 1441(a). Although McKesson is a resident of the forum, the forum defendant rule does not prevent this Court from taking jurisdiction of this action. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933 (9th Cir. 2006)

---

[1] Although plaintiff alleges that she is "the proper party to maintain this action," she failed to file a sworn successor in interest affidavit or declaration, as required by Cal. Civ. Proc. Code Section 377.32, and OMP reserves its objection to this defect.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

#385883 v1

(holding that forum defendant rule limitation on diversity-based removal jurisdiction is a procedural, or non-jurisdictional, rule). Further, because McKesson was fraudulently joined, that rule should not apply.

   a.   Amount in Controversy. Pursuant to California Code of Civil Procedure Section 425.10(b), the amount of damages sought by plaintiff is not stated in the Complaint. However, plaintiff alleges that her decedent "suffered death as a result of ingestion of [Ortho Evra®]." (Complaint ¶ 2; see also ¶ 11.) Plaintiff further alleges that OMP engaged in "fraudulent" and "reckless" conduct, giving rise to punitive damages claims. (See e.g. Complaint ¶¶ 49, 52D, 63E, 64, 76, 82E, 91, 102.)

Based on a review of damages awards and settlement amounts in this judicial district, in cases involving allegations of death from the use of prescription drugs or medical devices, it is reasonably believed that, if plaintiff succeeded in proving the allegations of her Complaint, she would recover a minimum of $75,000 in damages. (Buonaiuto Dec. ¶ 10.) Indeed, plaintiffs in the Ortho Evra® MDL have specifically alleged that the amount in controversy in their respective actions exceeds $75,000, exclusive of interest and costs. (Id.)

It is therefore "facially apparent" from the nature of the claims alleged and the types of damages sought that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. See White v. FCI USA, Inc., 319 F.3d 672, 674 (5th Cir. 2003) (it was "facially apparent" that claim exceeded $75,000 based on plaintiff's "lengthy list of compensatory and punitive damages"); see also In re Rezulin Products Liability Litigation, 133 F.Supp.2d 272, 296 (S.D.N.Y. 2001) (concluding that complaint "obviously asserts a claim exceeding $75,000" where plaintiff seeks "compensatory and punitive damages" for alleged "serious and life-threatening medical conditions" due to use of prescription medicine); International Padi, Inc. v. Diverlink, 2005 WL 1635347, *1 (9th Cir. Cal. 2005) (court considered plaintiffs' general allegations of unspecified general and special damages "reasonably believed to be in excess of the jurisdictional limits" of the trial court and their request for injunctive relief to "easily conclude" that the

1   $75,000 amount in controversy requirement was met).

2      b. Citizenship of the Parties. There is complete diversity of citizenship

3   between the parties, pursuant to 28 U.S.C. Section 1332. As alleged in the Complaint,

4   plaintiff is a citizen of Maryland. (Complaint ¶ 11.) At the time the state court action

5   was filed and at the time of this removal, OMP was and is a corporation existing under

6   the laws of the State of Delaware, with its principal place of business in New Jersey, and

7   McKesson was and is a corporation existing under the laws of the State of Delaware, with

8   its principal place of business in California. (Buonaiuto Dec. ¶ 3; Yonko Dec. ¶ 2.)

9      c. Forum Resident Defendant.McKesson has been Fraudulently Joined.

10   Given that the forum defendant rule is procedural – and not jurisdictional – the fact that

11   McKesson has its principal place of business in San Francisco does not prevent removal

12   of this action. *See, Wild Oats, supra.* Further, the Court should disregard the rule, as

13   plaintiff fraudulently joined McKesson as a "sham" defendant, solely in an effort to

14   invoke the rule and to prevent OMP from removing the action to federal court and then

15   transferring it to the Ortho Evra® MDL.

16     A defendant is fraudulently joined if "the plaintiff fails to state a cause of action

17   against the defendant, and the failure is obvious according to the settled rules of the

18   state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "When

19   determining whether a defendant is fraudulently joined, "[t]he court may pierce the

20   pleadings, consider the entire record, and determine the basis of joinder by any means

21   available.'" *Maffei v. Allstate California Ins. Co.*, 412 F.Supp.2d 1049 (E.D.Cal. 2006),

22   *citing Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D.Cal. 1979) ("it is well settled that upon

23   allegations of fraudulent joinder … federal courts may look beyond the pleadings to

24   determine if the joinder … is a sham or fraudulent device to prevent removal"). If

25   revealed that the joinder is fraudulent, the Court may dismiss the sham defendant.

26   *Maffei, supra.* McKesson is so fraudulently joined here.

27     McKesson is fraudulently joined because plaintiff has not made any material

28   allegations against it. *See e.g. Brown v. Allstate Insurance*, 17 F.Supp.2d 1134, 1137

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

#385883 v1  . NOTICE OF REMOVAL AND REMOVAL  4  CASE NO.

1    (S.D.Cal. 1998) (finding in-state defendants fraudulently joined where "no material

2    allegations" against those defendants were made).  Here, as demonstrated by the

3    Complaint, plaintiff's claims are substantively directed against the manufacturer of Ortho

4    Evra® – OMP, and not at McKesson.  Indeed, none of plaintiff's factual allegations, on

5    which all of her causes of action are based, involve McKesson.  (*See* "General

6    Allegations" at Complaint ¶¶ 25-40.)

7          Plaintiff claims that:  OMP obtained FDA approval of Ortho Evra®, despite

8    concerns about its safety; OMP failed to appropriately warn users and prescribing health

9    care providers of the alleged serious risks of using Ortho Evra®; OMP failed to properly

10   or adequately investigate safety concerns about Ortho Evra®; OMP's conduct fell below

11   the duty of care that it allegedly owed to plaintiff (which plaintiff presumably meant was

12   allegedly owed to her decedent); OMP misrepresented the known risks associated with

13   Ortho Evra®; OMP negligently and recklessly failed to inform the public and prescribing

14   health care providers of the alleged risks of using Ortho Evra®; and OMP was careless

15   and negligent in its manufacturing, testing, selling, distributing, merchandising,

16   advertising, promoting, packaging, and marketing of Ortho Evra®.[2]  (*Id.*)  Those

17   allegations have everything to do with the claimed acts and omissions of OMP, and

18   nothing to do with McKesson.

19          The only factual allegations that do relate to McKesson fail to state a claim against

20   that defendant.  Plaintiff alleges that McKesson "distributed and sold Ortho Evra in and

21   throughout the State of California," and that McKesson "packaged, distributed, supplied,

22   sold, placed into the stream of commerce, labeled, described, marketed, advertised,

23   promoted and purported to warn or to inform users regarding the risks pertaining to, and

24   assuaged concerns about the pharmaceutical Ortho Evra." (Complaint ¶¶ 4, 20.)  Notably

25   absent is any allegation that plaintiff's decedent fell within the general class of "users"

26

27          [2] As detailed in its Answer, filed simultaneously with this Removal, OMP denies plaintiff's
28   allegations and denies that it is liable to plaintiff in any manner or sum whatsoever.

1    referenced by plaintiff's conclusory allegations. Even more telling, plaintiff does not

2    allege that McKesson distributed or sold Ortho Evra® to her decedent or to any of her

3    decedent's health care providers or pharmacists. (*See* Complaint.) Further, the

4    Complaint lacks any allegation that McKesson sold or distributed Ortho Evra® outside

5    the State of California, where plaintiff's decedent presumably lived. *See* 28 U.S.C. §

6    1332(c)(2) (providing, in part, "the legal representative of the estate of a decedent shall

7    be deemed to be a citizen only of the same State as the decedent"). The absence of such

8    allegations compels the conclusion that plaintiff fraudulently joined McKesson. *See e.g.*

9    *Lyons v. American Tobacco Co.*, 1997 WL 809677 at *5 (S.D. Ala. 1997) (holding that

10    there is "no better admission of fraudulent joinder" than the failure of plaintiff "to set

11    forth any specific factual allegations" against the joined defendant).

12        In short, plaintiff fails to allege that her decedent received Ortho Evra® sold or

13    distributed by McKesson, a prerequisite to her product liability claims. It is essential that

14    a plaintiff who claims that a product distributed by defendant was defective must prove

15    that defendant was the distributor. *Garcia v. Joseph Vince Co.*, 84 Cal.App.3d 868, 874

16    (1978) ("Regardless of the theory which liability is predicated upon ... it is obvious that to

17    hold a producer, manufacturer, or seller liable for injury caused by a particular product,

18    there must first be proof that the defendant produced, manufactured, sold, or was in some

19    way responsible for the product"). Notwithstanding, given that the crux of plaintiff's

20    claims is an alleged failure to warn of the alleged risks of using Ortho Evra®, there is no

21    legal basis for the causes of action asserted against McKesson.

22        Under California law, McKesson bears no duty to warn. Rather, the "learned

23    intermediary doctrine" provides that the duty to warn of a drug's risk runs from the

24    manufacturer to the physician, and then from the physician to the patient. *See Brown v.*

25    *Superio Court (Abbott Labs.)*, 44 Cal.3d 1049, 1061-62, n.9 (1988); *Carlin v. Superior*

26    *Court (Upjohn Co.)*, 13 Cal.4th 1104, 1116 (1996). The rationale of the learned

27    intermediary doctrine is that the physician is in the best position to determine whether a

28    patient should use a prescription drug, and imposing a duty to warn on others would

RINKER BIDDLE & REATH LLP
) Fremont Street, 20th Floor
an Francisco, CA 94105

1   threaten to undermine reliance on the physician's informed judgment. For this reason,

2   California courts have rejected imposing liability on distributors, including specifically

3   McKesson, for failure to warn of the risks of using a prescription drug. *See e.g. Barlow*

4   *v. Warner-Lambert Co.*, Case No. CV-03-1647-R(RZx), Slip Op. at 2 (C.D.Cal. April 28,

5   2003) (attached as Ex. C to the Buonaiuto Dec.) ("the Court finds that there is no

6   possibility that plaintiffs could prove a cause of action against McKesson, an entity which

7   distributed [the prescription medication at issue] to pharmacists in California;" motion to

8   remand denied); and *Skinner v. Warner-Lambert Co.*, Case No. CV-03-1643-R(RZx),

9   Slip Op. at 2 (C.D.Cal. April 28, 2003) (attached as Ex. D to Buonaiuto Dec.) (same).

10        Further, McKesson had no involvement in the development or preparation of the

11   prescribing information for Ortho Evra® and did not have any responsibility for the

12   content of other written warnings concerning Ortho Evra®. (Yonko Dec. ¶ 5.) At no

13   time has McKesson had any involvement with the manufacture, development, testing,

14   packaging, labeling, advertising, promotion, or marketing of Ortho Evra®. (*Id.* ¶¶ 6-7.)

15        It is therefore a mystery why McKesson is named in this case, other than as a

16   "sham" defendant to prevent OMP from removing the action to federal court and then

17   transferring it to the Ortho Evra® MDL. Courts have consistently ruled that such

18   collusive tactics are not to be recognized. *See e.g. Attorneys Trust v. Videotape*

19   *Computer Products, Inc.*, 93 F.3d 593 (9th Cir. 1996) (noting there is no more reason for

20   federal courts to countenance destruction of jurisdiction by the use of straw parties than

21   there is for them to countenance the creation of jurisdiction in that manner); *Grassi v.*

22   *Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990), *citing* American Law Institute, Study

23   of the Division of Jurisdiction Between State and Federal Courts, Official Draft, at 169

24   (1969) ("Removal based on diversity of citizenship is a right conferred by Congress, the

25   need for which 'may well be greatest when the plaintiff tries hardest to defeat it.'").

26        d.   Citizenship of Doe Defendants. Pursuant to 28 U.S.C. Section

27   1441(a), for purposes of removal, the citizenship of defendants Does 1-500 must be

28   disregarded because plaintiff sued those defendants under fictitious names.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

#385883 v1        . NOTICE OF REMOVAL AND REMOVAL                        CASE NO.

1

## REMOVAL TIMELY FILED

2      3.      Service was made on OMP's registered agent for service of process on

3    June 12, 2007. (Buonaiuto Dec. ¶ 3.) McKesson was served, via its registered agent, on

4    June 20, 2007. (*Id.* ¶ 4.) Therefore, this Removal was timely filed within 30 days of

5    service, pursuant to 28 U.S.C. § 1446(b).

6

## CONSENT TO REMOVAL

7      4.      The only other named defendant, McKesson, was fraudulently joined, and

8    its consent is therefore not required for removal; notwithstanding, McKesson consents to

9    OMP's removal of this action to this Court. (Buonaiuto Dec. ¶ 4.)

10

## STATE COURT WITHIN THE COURT'S JURISDICTION

11      5.      The San Francisco County, California Superior Court, from which OMP

12    removes this action, is within this Court's jurisdiction.

13

## STATE COURT PLEADINGS

14      6.      Copies of the state court pleadings known to OMP to have been filed in this

15    action are collectively attached to the Buonaiuto Dec. as Exhibit A.

16

## FILING AND SERVICE OF NOTICE OF REMOVAL AND REMOVAL

17      7.      OMP will file a notice of the filing of this Notice of Removal and Removal

18    in the San Francisco County Superior Court and will serve plaintiffs' counsel with a

19    copy. (Buonaiuto Dec. ¶ 5.)

20      WHEREFORE, OMP hereby removes to this Court San Francisco County

21    Superior Court Case No. CGC-07-463332.

22

23    Dated: June 29, 2007                    DRINKER BIDDLE & REATH

24

25                                           BRENDA N. BUONAIUTO
26                                           Attorneys for Defendants
27                                           ORTHO-MCNEIL PHARMACEUTICAL,
                                             INC. and MCKESSON CORPORATION
28